UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUBURN SALES, INC.,

       Plaintiff,                        Civil Case No. 14-10922
                                                Honorable Linda V. Parker

v.

CYPROS TRADING &
SHIPPING, INC., JOSEPH
KILANI, and FADI KILANI,

       Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT [ECF NO. 40]

Plaintiff Auburn Sales, Inc., ("Plaintiff" or "Auburn") brings four (4) claims against Defendants Cypros Trading & Shipping, Inc. ("Cypros"), Joseph Kilani, and Fadi Kilani (collectively "Defendants"): (1) "intentional interference with business relationship"; (2) "intentional interference with prospective economic advantage"; (3) breach of contract; and (4) negligence. (Compl., ECF No. 1 at Pg. ID 6–10.) On February 3, 2015, Defendants filed their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 40.) Having reviewed the motion, it is apparent that the motion is improperly labeled, and is in fact a motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c). For reasons that follow, the Court **GRANTS** Defendants'

1

motion as to count four and **DENIES** Defendants' motion as to counts one, two and three.

I.

**Factual Background**

Plaintiff is in the business of buying Chrysler parts, and reselling said parts to Defendant Cypros exclusively. (Compl., ECF No. 1 at Pg. ID 3.) Defendant Joseph Kilani and his son, Defendant Fadi Kilani, are employees of Defendant Cypros. (*Id.*) In early 2009, Plaintiff began having discussions with Automotive Aftermarket Resources, LLC ("AAR") and Chrysler's parts subsidiary Mopar ("Mopar") – both nonparties to this case – in order to obtain Chrysler parts at favorable pricing. (*Id.* at Pg. ID 4.) In March 2010, Plaintiff, AAR, Mopar, and Defendant Cypros cemented a distribution chain agreement for procuring Chrysler parts for the Middle East through Defendant Cypros. (*Id.*) The agreement was as follows: "[Mopar] would provide all the parts that Auburn could sell to AAR [;] who would then sell them to Auburn at a markup [;] who would then sell the parts to Cypros at a markup [.] (*Id.*) Mopar delivered the goods directly to Defendant Cypros under a "drop shipment" agreement; and consequently, parts were never tangibly in the hands of AAR or Plaintiff. (*Id.*)

Plaintiff asserts that in 2011, Defendants obtained counterfeit parts, and mixed and sold them with legitimate Chrysler parts they had purchased from

2

Plaintiff. (*Id.* at Pg. ID 5.) In February 2013, the FBI raided Defendants' New Jersey warehouse. (*Id.*) Thereafter, Defendant Fadi Kilani was charged with trafficking in counterfeit goods, and ultimately pled guilty to the charges in the indictment. (*Id.*)

Plaintiff asserts that when Mopar learned of Defendants' conduct, Mopar instructed AAR that it could no longer sell Chrysler parts to Plaintiff. (*Id.* at Pg. ID 6.) Plaintiff asserts that once Defendants' wrongful actions became publicly known, Plaintiff's "automotive supplier customers" refused to do business with it, and that said customers imputed Defendants' wrongful conduct onto Plaintiff. (*Id.*)

Plaintiff further asserts that as a result of the harm caused to its reputation by Defendants' conduct, it is unable to procure or sell any parts. (*Id.*) Consequently, Plaintiff filed its lawsuit asserting: (1) "intentional interference with business relationship"; (2) "intentional interference with prospective economic advantage"; (3) breach of contract; and (4) negligence. (*Id.* at Pg. ID 6–10.)

## II.

**Standard of Review**

Despite the fact that Defendants label their motion as a "motion for summary judgment," having reviewed the motion, it is readily apparent to the Court that Defendants provide solely a Rule 12(b)(6) standard, provide no evidence in support of the initial motion, and make an argument entirely on the

3

pleadings. (*See* ECF No. 40.) Consequently, the Court construes Defendants' motion as a motion for judgment on the pleadings, brought pursuant to Rule 12(c), and addresses the motion as such.

The standard of review for a motion for judgment on the pleadings for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(c) is the same as that which should be undertaken when evaluating a motion brought pursuant to Rule 12(b)(6). *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir. 2010). Thus, a district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.,* 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir.2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff

4

[must] plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949; *see also Albrecht,* 617 F.3d at 893 (applying these standards to a motion brought under 12(c)). In essence, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Jurisdiction in the case at hand is based on diversity of citizenship. In diversity cases such as this, the district court applies state law in accordance with the controlling decisions of the state supreme court. *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The parties agree that Michigan law governs this dispute, and accordingly, the Court applies Michigan state law to the instant action.

### III.

**Tortious Interference Claims**

In count one of the complaint, Plaintiff asserts that Defendants engaged in "intentional interference with the business relationship." (Compl., ECF No. 1 at Pg. ID 6.) This claim is properly labeled as "tortious interference with a business relationship." The elements of tortious interference with a business relationship are: (1) existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) the knowledge of the relationship or

5

expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) the resultant damage to the plaintiff. *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 772 (E.D. Mich. 2010) (citing *Lucas v. Monroe County* 203 F.3d 964, 978–79 (6th Cir. 2000)); *McKesson Med.-Surgical Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 597 (E.D. Mich. 2003). "[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act, or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship of another." *Rockwell Med., Inc. v. Yocum*, 76 F. Supp. 3d 636, 648 (E.D. Mich. 2014); (citing *Formall, Inc. v. Cmty. Nat. Bank of Pontiac*, 166 Mich.App. 772, 779, 421 N.W.2d 289, 292 (1988)); *Beirut Traders Co. v. Neiman Marcus Grp., Inc., Maersk, Inc.*, No. 2:09-CV-11176, 2009 WL 3460674, at *6 (E.D. Mich. Oct. 22, 2009). A claim of tortious interference with business relationship does not require the existence of an enforceable contract. *See McKesson Med.-Surgical Inc.*, 266 F. Supp. 2d at 597.

Plaintiff also asserts a claim of "intentional interference with prospective economic advantage" in count two of the complaint. (Compl., ECF No. 1 at Pg. ID 7.) This claim is properly labeled as tortious interference with economic expectancy. Similarly to tortious interference with a business relationship, to

6

prevail on a claim of tortious interference with economic expectancy under Michigan law, Plaintiff must prove: (i) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citing *Lucas v. Monroe Cnty.*, 203 F.3d 964, 979 (6th Cir.2000)); *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 281 (6th Cir. 1991). A claim of tortious interference with economic expectancy also does not require the existence of an enforceable contract. *See Monette*, 929 F.2d at 281.

When determining whether a defendant intentionally interfered with a plaintiff's alleged economic expectancy, the Sixth Circuit holds that "intentional interference requires more than just purposeful or knowing behavior on the part of the defendant. A plaintiff must also allege that the interference was either (1) a per se wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the ... business relationship of another." *Saab Auto. AB*, 770 F.3d at 441 (citing *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir.2003)) (internal quotation marks and further citations omitted).

The elements of elements of tortious interference with business relationship mirror those of a tortious interference with economic expectancy claim;

7

accordingly, the Court will analyze both varieties of tortious interference claims together. Plaintiff has sufficiently pled both tortious interference claims. Plaintiff asserts that because Defendants "intentionally comingled counterfeit and mislabeled parts" with the Chrysler parts they purchased from Plaintiff, AAR and Mopar terminated their business relationship with Plaintiff. Further, Plaintiff claims that the termination of this relationship resulted in revenue loss, due to Plaintiff's inability to obtain Chrysler parts from AAR. (Compl, ECF No. 1 at Pg. ID 6.) Plaintiff also claims that Defendants' wrongful conduct constitutes a per se wrongful act, given that said conduct violates federal law. (*Id.* at 5.) The Court finds that the factual content provided by Plaintiff contains both direct and inferential allegations respecting all material elements of Plaintiff's tortious interference claims. Further, the facts provided allow the Court to draw a reasonable inference that Defendants are liable for the misconduct alleged. Accordingly, the Court **DENIES** Defendants' motion as to counts 1 and 2 of the complaint.

## IV.

**Breach of Contract Claim**

In count three of the complaint, Plaintiff asserts a breach of contract claim against Defendants. As pleaded, Plaintiff's breach of contract claim is sufficient. To plead breach of contract under Michigan law, the following must be alleged:

8

"(1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions; (3) a party breached the contract; and (4) the breach caused the other party's injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. Appx. 452, 459 (6th Cir. 2012). Plaintiff asserts that there was a valid requirements contract between itself, AAR, Mopar, and Defendant Cypros. (Compl., ECF NO. 1 at Pg. ID 4.)  Plaintiff asserts that the agreement required Defendant Cypros to purchase Chrysler parts from Plaintiff, and also required Defendant Cypros to sell those parts to Middle East importers and wholesalers. (*Id.* at Pg. ID 8.) Further, Plaintiff asserts that the parties' agreement also precluded Defendants from comingling counterfeit and mislabeled parts with the parts purchased from Plaintiff, and that irrespective of the terms of the agreement, Defendants violated the agreement by commingling. Plaintiff asserts that this conduct thereby caused damage to Plaintiff – namely, Mopar's cessation of sales of Chrysler parts to AAR for resale to Plaintiff. (*Id.*) Plaintiff provides facts, respecting all material elements of a breach of contract claim, sufficient to state a claim to relief that is plausible on its face; and accordingly, the Court **DENIES** Defendants' motion as to Count 3 of the complaint.

## V.

**Negligence Claim**

Plaintiff brings a negligence claim against Defendants in count four of the complaint. (Compl., ECF No. 1 at Pg. ID 9.) The elements of negligence under Michigan law are duty, breach of that duty, causation, and damages. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) (citing *Brown v. Brown,* 478 Mich. 545, 739 N.W.2d 313, 316–17 (2007)).

"Under Michigan law, a plaintiff must prove four elements to prevail in a negligence claim: a duty owed by the defendant, a breach of that duty, causation, and damages." *Stacy v. HRB Tax Group, Inc.*, No. 11–2012, 2013 WL 811818, at *2 (6th Cir. Mar. 6, 2013). "Only if the law recognizes a duty to act with due care arising from the relationship of the parties does it subject the defendant to liability for negligent conduct." *Id.* (citing *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 591 (Mich.1981)).

"Since Michigan courts maintain the distinction between contract and tort, plaintiffs in a negligence action must show a duty *separate and distinct* from that imposed by contract to give rise to tort liability." *Jones v. Colonial Sav. F.A.*, No. 13-CV-12092, 2013 WL 6473708, at *15 (E.D. Mich. Dec. 10, 2013) (quoting *Kroger v. AEC Enters. Const., Inc.*, No. 286333, 2009 WL 4981180, at *5 (Mich. Ct. App. Dec. 22, 2009)) (further citations and internal quotations omitted) (emphasis added). This distinction bars a party from recovering in a tort action

10

when the party suffered losses due to a breach of contract. *Id.* (citing *Johnson v. Bank of America Corp.*, 2013 WL 664906, at *3 (W.D. Mich. Feb. 22, 2013)).

In its negligence action, Plaintiff asserts that Defendants owed a duty to Plaintiff not to comingle counterfeit parts with the Chrysler parts it purchased from Plaintiff; that Defendants breached this duty by comingling; and that said breach of duty caused damages to Plaintiff – specifically, Mopar's discontinuance of supplying parts to AAR for resale to Plaintiff. (Compl., ECF No. 1 at Pg. ID 9.) The duty Plaintiff asserts in its negligence claim is identical to the duty Plaintiff asserts in its breach of contract claim. To reiterate, mirroring its negligence claim, Plaintiff asserts in its breach of contract action that the contract between itself, AAR, Mopar, and Defendant Cypros prohibited Defendants from commingling; that Defendants violated the agreement by comingling; and that the breach caused loss to Plaintiff. (*Id.* at Pg. ID 8–9.) Since the loss Plaintiff asserts it suffered in its negligence action is identical to the loss Plaintiff claims he suffered due to Defendants' breach of the contract, Plaintiff's recovery under a negligence cause of action is barred. See *Jones*, No. 13-CV-12092, 2013 WL 6473708, at *15 (citing *Johnson*, 2013 WL 664906, at *3. Because Plaintiff fails to allege any duty that is separate and distinct from the Defendants' contractual obligations, Plaintiff's negligence claim fails. *Id.* (citing *Whitfield v. Bank of America,* No. 12–cv–14585,

11

2013 WL 1506588, at *7 (E.D. Mich. Apr. 12, 2013). Accordingly, the Court **GRANTS** Defendants' motion as to Count 4 of the complaint.

Accordingly, for the foregoing reasons, Defendants' motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) is **GRANTED IN PART AND DENIED IN PART** in that Plaintiff's negligence claim (Count 4), only, is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

        s/ Linda V. Parker
        LINDA V. PARKER
        U.S. DISTRICT JUDGE

Dated: September 1, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 1, 2015, by electronic and/or U.S. First Class mail.

        s/ Richard Loury
        Case Manager