UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUBURN SALES, INC.,

    Plaintiff/Counter-Defendant,    CIVIL ACTION NO. 14-cv-10922

    v.    DISTRICT JUDGE LINDA V. PARKER

CYPROS TRADING & SHIPPING,    MAGISTRATE JUDGE MONA K. MAJZOUB
INC., JOSEPH KILANI, and FADI
KILANI,

    Defendants/Counter-Claimants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY [75] AND GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER [90]**

This matter comes before the Court on Plaintiff Auburn Sales, Inc.'s Motion to Compel Discovery (docket no. 75) and Defendants Cypros Trading & Shipping, Inc., Joseph Kilani, and Fadi Kilani's Motion for Leave to File Amended Answer (docket no. 90). The parties filed response and reply briefs with regard to each motion. (Docket nos. 84, 89, 96, and 103.) The parties also filed a Joint Statement of Resolved and Unresolved Issues regarding Plaintiff's Motion to Compel Discovery. (Docket no. 102.) The motions have been referred to the undersigned for consideration. (Docket no. 78 and 91.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.    BACKGROUND**

Plaintiff initiated this action against Defendants on February 28, 2014. (Docket no. 1.) In its Complaint, Plaintiff alleges that in 2010, the parties entered into an oral agreement for the

sale of Chrysler parts from Plaintiff to Defendant Cypros for resale in the Middle East. (*Id*. ¶¶ 15, 25-28.) According to Plaintiff, the agreement was a requirements contract under which Chrysler would provide all the parts that Plaintiff could sell to Automotive Aftermarket Resources, LLC (AAR), who would then sell the parts to Plaintiff at a markup, and Plaintiff would then sell the parts to Defendant Cypros at a markup; the parts, however, were to be delivered directly from Chrysler to Defendant Cypros under a drop ship agreement. (*Id*. ¶ 27.) Plaintiff claims that in 2011, Defendants obtained and began selling counterfeit goods and that they intentionally commingled and mislabeled those goods with the legitimate Chrysler parts sold to them by Plaintiff, thereby diluting and tainting the Chrysler trademarks associated with the legitimate parts. (*Id*. ¶¶ 31, 47.) Plaintiff explains that the Federal Bureau of Investigation (FBI) raided Defendants' warehouse on February 19, 2013, after which Defendant Fadi Kilani was indicted for the counterfeiting activities mentioned above and pled guilty to the charges in the indictment, admitting that he "knowingly and intentionally did traffic in counterfeit car parts, knowingly using counterfeit marks belonging to auto makers such as Ford, GM and Chrysler, where that was likely to cause confusion, mistake or deceive." (*Id*. ¶¶ 32-35.)

Plaintiff asserts that once Defendants' conduct became known, Chrysler and Plaintiff's other automotive supplier customers imputed wrongdoing to Plaintiff as a result of Defendants' illegal activities and refused to do business with Plaintiff. (*Id*. ¶¶ 38, 40.) Plaintiff contends that as a result of this harm to its reputation, it was unable to buy or sell any parts. (*Id*. ¶ 41.) Plaintiff alleges that Defendants knew or had reason to know that their conduct would result in damages to Plaintiff and that it has, in fact, caused significant monetary damages. (*Id*. ¶¶ 42-43.) Plaintiff sets forth claims against Defendants of intentional interference with business

relationship, intentional interference with prospective economic advantage, breach of contract, and negligence, and it seeks a judgment of $2,000,000.[1] (*Id*. ¶¶ 44-76.)

Defendants filed an Answer to Plaintiff's Complaint as well as counterclaims of fraudulent misrepresentation and breach of contract on October 13, 2014. (Docket no. 25.) Specifically, Defendants' counterclaims allege that Plaintiff misrepresented to Defendants that the axle shafts it sold to them were OEM (original equipment manufacturer) automotive parts, but they were actually aftermarket parts. (*Id*. at 11.) They further allege that this misrepresentation, and Plaintiff's failure to deliver the parts as promised, resulted in customer complaints, a lawsuit, cancelled customer orders, a loss of sales totaling no less than $500,000.00, and a loss of future business opportunities. (*Id*. at 11-13.) Defendants seek a judgment of not less than $500,000.00. (*Id*. at 13.)

Plaintiff filed the instant Motion to Compel Discovery on October 8, 2015, citing several issues with Defendants' response to Plaintiff's First Document Production Request to Defendants. (Docket no. 75.) Defendants filed the instant Motion for Leave to File Amended Answer on November 16, 2015. (Docket no. 90.) The Court will address these two motions herein.

## II. GOVERNING LAW

### A. Discovery Standard

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the

---

[1] The court dismissed Plaintiff's negligence claim on September 1, 2015. (Docket no. 71.)

determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B). If a court grants a Rule 37 motion to compel, or if discovery is received after a Rule 37 motion is filed, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(a)(5)(A).

### B. Motion to Amend Standard

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

4

requires." Fed. R. Civ. P. 15(a)(2). Factors relevant to the determination of whether to permit an amendment include "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).

### III. ANALYSIS

#### A. Plaintiff's Motion to Compel Discovery [75]

Plaintiff served Defendants with its First Document Production Request on February 3, 2015, requesting that Defendants produce documents responsive to fifty-eight requests for production (RFPs) by March 10, 2015. (Docket no. 75 at 6; docket no. 75-1.) In their response, dated March 20, 2015, Defendants (1) indicated that they had attached responsive documents within their possession, custody, and control; (2) informed that a number of documents were unavailable for production, as they had been seized by the government in its raid of Defendant Cypros's warehouse on February 19, 2013, in connection with the matter of *U.S. v. Fadi Kilani*; (3) objected to the production of tax returns and other documentation or information related to Defendant Cypros's customers or vendors as irrelevant, privileged, confidential, overly broad, burdensome, and oppressive; and (4) objected to the production of any emails or other communications related to Defendant Fadi Kilani's attorneys as privileged. (Docket no. 75-2.) After a series of communications between counsel, Plaintiff filed the instant Motion to Compel Discovery, specifically citing issues with Defendants' responses to RFP nos. 1-4 and 7-11, among other things. (*See* docket nos. 75 and 75-3.) The parties indicate in their Joint Statement of Resolved and Unresolved Issues, however, that all of Plaintiff's fifty-eight RFPs are in dispute. (*See* docket no. 102.)

As an initial matter, the Court finds that Defendants' Response to Plaintiff's First Document Production Request violates Federal Rule of Civil Procedure 34(b)(2)(B) and Eastern District of Michigan Local Rule 26.1. Rule 34(b)(2)(B) provides that "[f]or *each item or category*, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). Similarly, Local Rule 26.1 requires "[t]he party answering, responding, or objecting to . . . requests for production of documents or things . . . [to] either set forth the answer, response, or objection in the space provided [after each request] or [] quote each . . . request in full immediately preceding the statement of any answer, response, or objection thereto." Here, Defendants do not follow either of these rules; instead, they provided a general, collective response with regard to all of Plaintiff's RFPs, as described above. Consequently, with the exception of Plaintiff's request for corporate tax returns, it is unclear as to which RFPs Defendants produced documents or to which RFPs Defendants objected.

More importantly, though, Defendants' objection "to producing tax returns and other documentation or information related to Cypros' customers or vendors as it is irrelevant, privileged, confidential, overly broad, burdensome and oppressive" constitutes a boilerplate objection. The Court has repeatedly found that the filing of boilerplate objections is tantamount to filing no objections at all. *See Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.*, No. 10-CV-15174, 2012 WL 5503823, at * 1 (E.D. Mich. Nov. 13, 2012); *FenF, LLC v. Taylor Gifts, Inc.*, No. 10-14351, 2011 WL 3422789, at *2 (E.D. Mich. Aug. 3, 2011); *PML North Am., L.L.C. v. World Wide Personnel Servs of Va., Inc.*, No. 06-CV-14447-DT, 2008 WL 1809133, at *1 (E.D. Mich. Apr. 21, 2008); *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, Nos. 05-CV-

6

74594-DT and 05-CV-74930-DT, 2007 WL 4098727, at *1 (E.D. Mich. Nov. 16, 2007). Moreover, Defendants' general assertion of privilege and failure to submit a privilege log is not proper. *See* Fed. R. Civ. P. 26(b)(5). Accordingly, the Court finds that Defendants waived any objections to the discovery requests at issue. Defendants' attempts to clarify or specify their objections in later communications with Plaintiff's counsel or in their Response to the instant Motion are not well taken.

Nevertheless, the Court is inclined to address the parties' arguments regarding the production of Defendants' corporate tax returns for the last three years (RFP no. 3). Plaintiff contends that the tax returns are relevant to Defendants' counterclaim for damages and to the "strongly-contested" issue of Defendant Cypros's corporate ownership. (Docket no. 75 at 9-10.) In their Response to Plaintiff's Motion, Defendants indicate that tax returns for Defendant Cypros for the years 2012, 2013, or 2014 have not been filed. (Docket no. 84 at 8 n.3.) Defendants then argue, in case those tax returns are filed in the future, that the returns are irrelevant and that Plaintiff can obtain the information it seeks regarding Defendants' counterclaim for damages and Defendant Cypros's corporate ownership from other sources, such as documentation of cancelled customer orders and Defendants' stock certificates. (*Id*. at 7-9.)

"[T]ax returns are subject to discovery in civil litigation between private parties." *Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*, 94 F.R.D. 113, 119 (S.D. Ohio 1982). A party may seek discovery of a tax return if it is relevant to the subject matter in dispute and a compelling need exists for the return because the information is not readily available from another source. *Ruth v. Superior Consultant Holdings Corp.*, No. 99-CV-71190-DT, 2000 WL 1769576, at *2 (E.D. Mich. Oct. 16, 2000) (citing *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997)). The relevancy of tax returns is not limited solely to financial issues. *See Credit Life,* at

121 (tax returns relevant to jurisdiction and the corporate "alter ego" theory asserted by the plaintiffs and one defendant); and *Heathman v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 503 F.2d 1032, 1033 (9th Cir. 1974) (tax returns relevant to "the nature of the interrelationship among the various defendants," including individuals, corporations and other legal entities). Once the party seeking production has made the required showing of relevancy, the burden then shifts to the party opposing production to identify an alternative source for the information. *Ruth, supra*.

The Court finds that Defendant Cypros's tax returns are relevant to both Defendants' counterclaims and the issue of Defendant Cypros's corporate ownership. The Court also finds that Defendants have failed to meet their burden of showing that the information Plaintiff seeks is available from another source, particularly with regard to Defendant Cypros's corporate ownership. Defendants assert that Defendant Cypros's stock certificates, which have already been provided to Plaintiff, would contain that information. (Docket no. 84 at 9.) The Court is not convinced, however, especially in light of Plaintiff's contention that it has received various, conflicting stock certificates and corporate resolutions from Defendants. (*See* docket no. 89 at 8.) As Plaintiff asserts, the corporate tax returns may clarify the ownership issue. (*See id.*) Therefore, Defendants must produce the tax returns, if and when they are filed, as requested.

For the reasons stated above, the Court will grant Plaintiff's Motion to Compel Discovery and order Defendants to produce all documents or items responsive to Plaintiff's First Document Production Request within their custody, possession, or control, to the extent that they have not yet done so, under cover of the existing Stipulated Protective Order (docket no. 45) if necessary[2], without further objection, within twenty-one (21) days of this Order. The Court will also order

---

[2] Defendants' assertion that the *Stipulated* Protective Order is insufficient to protect their "right of privacy and confidentiality" because "Defendants are not in a position to trust Plaintiff" (*see* docket no. 84 at 9) is unsupported and without merit.

Defendants to file an affidavit stating that they have produced all responsive documents within their custody, possession, or control in accordance with this Order and that the production is complete.

### B. Defendants' Motion for Leave to File Amended Answer [90]

Defendants seek leave to amend their Answer, which was originally filed on October 13, 2014, solely to amend paragraphs 56 and 57 "to clarify the actual parties who admit, deny and/or have insufficient information as to the stated allegations" to conform with Defendants' position throughout the litigation. (Docket no. 90 at 1-2.) Paragraphs 56 and 57 of Plaintiff's Complaint allege:

> 56. Upon information and belief, the Defendants knowingly and intentionally mixed counterfeit parts with the Chrysler parts that Cypros purchased from Auburn.
>
> 57. Upon information and belief, the Defendants knowingly and intentionally commingled mislabeled parts with the parts that Cypros purchased from Auburn.

(Docket no. 1 ¶¶ 56-57.) Paragraphs 56 and 57 of Defendants' Answer read as follows:

> 56. In response to paragraph 56 of Plaintiff's Complaint, Defendants admit that they mixed counterfeit parts but deny purchasing the goods directly from Auburn.
>
> 57. In response to paragraph 57 of Plaintiff's Complaint, Defendants admit that they mixed counterfeit parts but deny purchasing the goods directly from Auburn.

(Docket no. 25 ¶¶ 56-57.) Defendants explain that a colloquy regarding these paragraphs took place at Defendant Joseph Kilani's deposition, through which he testified that the original responses to paragraphs 56 and 57 were "a mistake" in that they imputed an admission to "Defendants" collectively. (*Id*. at 7-9.) During that colloquy, Defendants' counsel informed

9

Plaintiff's counsel of Defendants' intent to amend their Answer to clarify their responses to those paragraphs.[3] (*Id*.) Defendants propose the following amended paragraphs:

> 56. In response to paragraph 56 of Plaintiff's Complaint, Defendants deny this paragraph but admit Fadi Kilani plead guilty as set forth in the plea agreement entered before the Hon. James C. Francis IV of the United States District Court, Southern Division of New York on July 2, 2013 and leaves the Creditor to its proofs. Defendants further deny that they purchased the alleged parts directly from Auburn.
>
> 57. In response to paragraph 57 of Plaintiff's Complaint, Defendants deny this paragraph but admit Fadi Kilani plead guilty as set forth in the plea agreement entered before the Hon. James C. Francis IV of the United States District Court, Southern Division of New York on July 2, 2013 and leaves the Creditor to its proofs. Defendants further deny that they purchased the alleged parts directly from Auburn.

(Docket no. 90 at 20.)

Defendants argue that the Court should grant them leave to amend their answer for four reasons. First, Defendants assert that by granting their Motion, the Court will be deciding this case on the merits of Defendants' position, thereby furthering the goals of justice and efficiency. (*Id*. at 9.) Second, Defendants argue that Plaintiff will not be prejudiced if the Court allows the amendment because their Motion was filed two months before the discovery deadline and six months before trial, Plaintiff had not yet filed a dispositive motion, and the amendment would not cause a significant delay in this matter or cause Plaintiff to expend significant additional resources in conducting discovery or preparing for trial. (*Id*. at 9-10.) Next, Defendants assert that if left unchanged, their responses to paragraphs 56 and 57 would be fundamentally inconsistent with their position throughout this matter that Defendant Fadi Kilani pled guilty to counterfeiting, but Defendants Cypros and Joseph Kilani have never admitted to any criminal wrongdoing. (*Id*. at 10-11.) Defendants cite to paragraphs 31, 35-36, 40-43, 47, 49-50, 55, 58,

---

[3] Plaintiff informs that also during this colloquy, Defendant Joseph Kilani asserted his Fifth Amendment rights as to any criminal conduct, including the counterfeiting activities. (Docket no. 96 at 4-5 (citing docket no. 89-1 at 148-49).)

66, and 75 of their Answer to demonstrate the consistency of their position. (*Id*. at 10.) Lastly, Defendants argue that Plaintiff's Complaint is poorly drafted in that the allegations reference "Defendants" rather than a specific Defendant, to which Defendants found it "tricky" to respond. (*Id*. at 11.)

Plaintiff argues that paragraphs 56 and 57 of Defendants' Answer constitute judicial admissions, which are not easily or readily withdrawn. (Docket no. 96 at 5-8.) Plaintiff further asserts that Defendants' Motion is untimely, as they are seeking to "switch gears" on a position that they maintained for over a year, since the date of the Answer. (*Id*. at 8-12.) In support of this assertion, Plaintiff points out that Defendants made a similar admission on the record at a May 27, 2015 hearing before Judge Parker when defense counsel stated, "The counterfeiting didn't take place between plaintiff and defendants. Counterfeiting took place between defendants and third-party customers and I don't think that that's in dispute." (*Id*. at 3 (citing docket no. 72 at 26).) Plaintiff also claims that Defendants' failure to rebuke Plaintiff's allegations of Defendants' joint criminality in the Joint Case Management Order and Discovery Plan and in Plaintiff's president's February 20, 2015 affidavit reaffirms the substance of their answers to paragraphs 56 and 57. (*Id*. at 9-12.) Finally, Plaintiff argues that it would be prejudiced if the Court allows Defendants to withdraw their judicial admissions because Defendant Joseph Kilani's assertion of the Fifth Amendment privilege at his deposition precludes any further investigation or development of evidence regarding his knowledge or participation in the counterfeiting activities. (*Id*. at 7-8.)

In reply, Defendants assert that the Court should not hold Defendant Joseph Kilani's assertion of the Fifth Amendment privilege against him when considering any prejudice to Plaintiff. (Docket no. 103 at 2-3.) Defendants also address the one-year period of time between

the Answer and the instant Motion as "irrelevant," reasoning that there was very little activity during that time because the parties were waiting for a ruling on Defendants' Motion for Summary Judgment, and Defendant Fadi Kilani was unavailable due to his incarceration. (*Id*. at 3-4.) Defendants also reply that "judicial admissions are not relevant" because Defendants' position has been consistent throughout the litigation. (*Id*. at 5-7.) In making this argument, Defendants explain with regard to the May 27, 2015 in-court statement, "Defendant was simply making a generality about the Defendants" because "it was much easier to simply lump the Defendants together during oral arguments." (*Id*. at 5.) Defendants also argue that they had no affirmative duty, and they did not feel obligated, to contest Plaintiff's allegations in the Joint Case Management Order and Discovery Plan or Plaintiff's president's February 20, 2015 affidavit. (*Id*. at 6-7.)

"Judicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue." *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986) (citation and internal quotation marks omitted). "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Id*. at 551 (quoting *Brown v. Tenn. Gas Pipeline Co.,* 623 F.2d 450, 454 (6th Cir.1980)). "Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede ... an alleged fact.... [C]onsiderations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (quoting *U.S. v. Belculfine,* 527 F.2d 941, 944 (1st Cir. 1975)). "For example, the court may relieve a party from its admission if it was the result of inadvertence or mistake." *In re*

*Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Arioli,* 941 F.Supp. 646, 655 (E.D. Mich. 1996)). "An internal contradiction within a document strongly suggests inadvertence." *Id*. (citing *Stephenson v. Salisbury* (*In re Corland Corp.*), 967 F.2d 1069, 1074 (5th Cir.1992) and *Wade v. Cavalry Portfolio Servs.,* No. 3:08–CV–479–S, 2010 WL 3395690, at *2 (W.D. Ky. Aug. 25, 2010)).

Here, Defendant Joseph Kilani, at his deposition, testified that Defendants' responses to paragraphs 56 and 57 of Plaintiff's Complaint were "a mistake" and informed Plaintiff of Defendants' intent to file the instant motion to clarify their responses in accordance with their position throughout the litigation. Indeed, as Defendants point out, their responses to paragraphs 56 and 57 are directly contradicted by several other paragraphs in the Answer. Notably, in paragraphs 31 and 47 of the Answer, Defendants deny any counterfeiting activity. Paragraphs 31 and 47 of Plaintiff's Complaint allege:

> 31. In 2011, unbeknownst to Auburn, Defendants, in connection with their Auburn/Chrysler business, obtained and began selling counterfeit goods and mismarking boxes, mixing them in with the legitimate Chrysler parts that Auburn had sold to Defendants, diluting and tainting the Chrysler trademarks associated with legitimate parts that Cypros had purchased from Auburn.
>
> 47. Defendants intentionally commingled counterfeit and mislabeled parts with the Auburn parts that it sold to its customers.

(Docket no. 1 ¶¶ 31, 47.) Paragraphs 31 and 47 of Defendants' Answer read as follows:

> 31. In response to paragraph 31 of Plaintiff's Complaint, Defendants deny the same for the reasons that the same is untrue. Defendants object as this question is overly broad and vague as it does not relate to Defendant Fadi's plea agreement or to the nature of the sales.
>
> 47. In response to paragraph 47 of Plaintiff's Complaint, Defendants deny the same for the reason that the same is untrue. Defendants object as this question is vague as it does not identify the party's customers it is referring to.

((Docket no. 25 ¶¶ 31, 47.) These and several other paragraphs in Defendants' Answer substantiate Defendants' argument that their answers to paragraphs 56 and 57 were inadvertent; they also overshadow defense counsel's May 27, 2015 in-court statement as well as Defendants' lack of response to the allegations Plaintiff made in the Joint Case Management Order and Discovery Plan and Plaintiff's president's February 20, 2015 affidavit. Moreover, Defendants filed the instant Motion before the discovery period closed and months before trial, which would have left Plaintiff with plenty of time to conduct any additional discovery. Plaintiff's assertion of prejudice in that Defendant Joseph Kilani's assertion of the Fifth Amendment privilege would hinder any further discovery is somewhat speculative at this juncture. Accordingly, the Court finds that Defendants' admissions in paragraphs 56 and 57 of their Answer are of the type that should be allowed to be withdrawn, and the Court will grant Defendants' Motion to For Leave to File Amended Answer.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery [75] is **GRANTED** as follows:

a. To the extent that Defendants have not yet produced all documents or items responsive to Plaintiff's First Document Production Request within their custody, possession, or control, Defendants will do so, under cover of the existing Stipulated Protective Order [45] if necessary, without further objection, within twenty-one (21) days of this Order; and

b. Upon production, Defendants are ordered to file an affidavit stating that they have produced all responsive documents within their custody, possession, or control in accordance with this Order and that the production is complete.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Amended Answer [90] is **GRANTED**. Defendants will file the Amended Answer as proposed within seven (7) days of this Opinion and Order.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: June 22, 2016			s/ Mona K. Majzoub
					MONA K. MAJZOUB
					UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: June 22, 2016			s/ Lisa C. Bartlett
					Case Manager