UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUBURN SALES, INC.,

        Plaintiff,                      Civil Case No. 14-10922
                                                  Honorable Linda V. Parker

v.

CYPROS TRADING &
SHIPPING, INC., JOSEPH
KILANI, and FADI KILANI,

        Defendants.
_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 107) AND (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 110) AS MOOT**

On February 28, 2014, Plaintiff Auburn Sales, Inc. ("Auburn") filed this lawsuit against Defendants Cypros Trading & Shipping, Inc. ("Cypros"), Joseph Kilani, and Fadi Kilani (collectively "Defendants") arising out of a past business relationship between the parties. Presently before the Court are motions for summary judgment filed by both parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 107, 110.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting in part and denying in part Plaintiff's motion for

1

summary judgment, and denying Defendants' motion for summary judgment as moot.

## I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence

upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Anderson*, 477 U.S. at 252.

Courts evaluate cross-motions for summary judgment under the same standard. *La Quinta Corp. v. Heartland Props., LLC*, 603 F.3d 327, 335 (6th Cir. 2010) (citing *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)). When faced with cross- motions for summary judgment, each motion is examined on its own merits. *Id.*

### III. Factual and Procedural Background

Plaintiff is in the business of buying Chrysler parts, and reselling the parts to Defendant Cypros. (Compl. ¶ 13.) Defendant Joseph Kilani and his son, Defendant Fadi Kilani, are employees of Defendant Cypros. (*Id.* at ¶¶ 11, 12.) In early 2009, Plaintiff began having discussions with Automotive Aftermarket Resources, LLC ("AAR") and Chrysler's parts subsidiary Mopar ("Mopar")—both nonparties to this case—in order to obtain Chrysler parts at favorable pricing. (*Id.* at ¶¶ 25-26.) In March 2010, Plaintiff, AAR, Mopar, and Defendant Cypros cemented a distribution chain agreement for procuring Chrysler parts for the Middle East through Defendant Cypros. (*Id.*) The agreement was as follows: "[Mopar] would provide all the parts that Auburn could sell to AAR [;] who would then sell them to Auburn at a markup [;] who would then sell the parts to Cypros at a markup [.] (*Id.* at ¶ 27.) Mopar delivered the goods directly to Defendant Cypros under a "drop

shipment" agreement; and consequently, parts were never tangibly in the hands of AAR or Plaintiff. (*Id.*)

Plaintiff asserts that in 2011, Defendants obtained counterfeit parts, and mixed and sold them with legitimate Chrysler parts they had purchased from Plaintiff. (*Id.* at ¶ 31.) In February 2013, the FBI raided Defendants' New Jersey warehouse. (*Id.* at ¶ 32.) Thereafter, Defendant Fadi Kilani was charged with trafficking in counterfeit goods, and ultimately pled guilty to the charges in the indictment. (*Id.* at ¶ 33.)

Plaintiff asserts that when Chrysler learned of Defendants' conduct, Chrysler instructed AAR that it could no longer sell Chrysler parts to Plaintiff. (*Id.* at ¶ 38.) Plaintiff asserts that once Defendants' wrongful actions became publicly known, Plaintiff's "automotive supplier customers" refused to do business with it, and that said customers imputed Defendants' wrongful conduct onto Plaintiff. (*Id.* at ¶ 40.)

Plaintiff further asserts that as a result of the harm caused to its reputation by Defendants' conduct, it is unable to procure or sell any parts. (*Id.* at ¶ 41.) Consequently, Plaintiff filed its lawsuit on February 28, 2014, asserting: (1) "intentional interference with business relationship"; (2) "intentional interference with prospective economic advantage"; (3) breach of contract; and (4) negligence. (*Id.* at ¶¶ 44-76.)

On February 3, 2015, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 40.) This Court held a hearing on May 27, 2015. In its opinion and order issued on September 1, 2015, this Court construed Defendants' motion as a judgment on the pleadings and granted Defendants' motion as to the negligence claim and denied the motion on the remaining claims. (ECF No. 71.)

On May 16, 2016, Plaintiff filed a motion for summary judgment as to liability on their claims and requesting that this Court dismiss Defendants' counterclaims. (ECF No. 107.) Defendants filed an opposition brief on June 6, 2016 and Plaintiff filed a reply on June 20, 2016. (ECF Nos. 115, 117.) Defendants also filed a motion for summary judgment on May 18, 2016. (ECF No. 110.) Plaintiff filed an opposition brief on June 3, 2016 and Defendants submitted a reply on June 16, 2016. (ECF Nos. 114, 116.)

### IV. Plaintiff's Motion for Summary Judgment

#### A. Tortious Interference Claims

Plaintiff argues that this Court should grant summary judgment as to liability on their claims of tortious interference with a business relationship and interference with an economic expectancy. To prevail on a tortious interference claim, a party must establish (1) the existence of a valid business relationship or expectancy (enforceable contract not required); (2) the knowledge of the relationship or

expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted. *See Saab Auto. AB v. Gen Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (discussing tortious interference with economic expectancy); *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (discussing tortious interference with a business relationship).

The Sixth Circuit has found that intentional interference "requires more than just purposeful or knowing behavior on the part of the defendant." *Wausau Underwriters Ins. Co.*, 323 F.3d at 404. "[A] plaintiff must also allege that the interference was either (1) a *per se* wrongful act or (2) a lawful act done with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.*; *see also Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Wausau Underwriters Ins. Co.*, 323 F.3d at 404 (quoting *BPS Clinical Labs v. Blue Cross and Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996).

Plaintiff argues that intentional interference is established by: "(1) [Defendant] Fadi's guilty plea as to his counterfeiting, (2) [Defendant] Joseph's

6

admissions of counterfeiting in the Answer, and (3) [Defendant] Fadi's express admission of counterfeiting Chrysler labels and buying non-Chrysler parts[.]" In their opposition brief, Defendants argue that Plaintiff fails to demonstrate that Defendants had the requisite intent to interfere with Plaintiff's business. (ECF No. 115 at Pg ID 2709; *see also* ECF No. 110 at Pg ID 2558.)[1] According to Defendants, Plaintiff cannot satisfy intentional interference solely by establishing that Defendants intentionally engaged in the act of counterfeiting automobile parts. (ECF No. 115 at Pg ID 2709.) Defendants argue that Plaintiff fails to make a necessary distinction between intent to counterfeit and intent to interfere with the business relationship or economic advantage. (*Id.*) In their reply brief, Plaintiff goes further to say that intent is not a requirement where a party has committed a wrongful act, relying on *Mino v. Clio School Dist.*, 661 N.W.2d 586 (Mich. Ct. App. 2003). (ECF No. 114 at Pg ID 2620.) "Only a *lawful act* imposes the specific intent finding upon which Defendants harp[.]" (*Id.*)

Plaintiff's characterization of *Mino* is misleading. In *Mino*, the Michigan Court of Appeals stated that "[t]o establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity,

---

[1] In Defendants' opposition brief to Plaintiff's motion for summary judgment, Defendants direct the Court to legal arguments made in their motion for summary judgment to defeat Plaintiff's motion. (*See* ECF No. 115 at Pg ID 2709-10.) The Court therefore relied on Defendants' motion for summary judgment brief and responsive briefs in evaluating Plaintiff's motion for summary judgment.

7

affirmative acts by the defendant that corroborate the improper motive of the interference." *Mino*, 661 N.W.2d at 596. Plaintiff is correct in stating that Defendants actions would not constitute a lawful act. However, the case law is clear that the interference—whether lawful or unlawful—must have been "for the purpose of invading the contractual rights or business relationship of another." *Wausau Underwriters Ins. Co.*, 323 F.3d at 404. Plaintiff has failed to demonstrate that Defendants sold counterfeit automobile parts for the purpose of causing Chrysler to refuse to sell parts to AAR and is, therefore, unable to prevail on their tortious interference claims.[2] The Court therefore is dismissing Count I and Count II of the Complaint.

### B. Breach of Contract

Plaintiff argues that this Court should grant summary judgment as to liability on their breach of contract claim. In particular, Plaintiff contends that Cypros first breached the contract by purchasing car parts from other parties. (ECF No. 107 at Pg ID 1198.) Plaintiff further alleges that Defendants breached their contract by commingling Plaintiff's products with "misrepresented non-Chrysler items." (*Id.*)

To plead breach of contract under Michigan law, the following must be alleged: "(1) the existence of a valid contract between the parties; (2) the terms of

---

[2] The Court agrees with Defendants that it is odd that Defendants would want Plaintiff to go out of business, given that Defendants benefited from the relationship between Plaintiff, AAR, and Chrysler. (ECF No. 110 at Pg ID 2558.)

8

the contract require performance of certain actions; (3) a party breached the contract; and (4) the breach caused the other party['s] injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. Appx. 452, 459 (6th Cir. 2012).

Neither party asserts that there was a written agreement. Rather, Plaintiff argues there was a three-level oral requirements contract, where "Auburn procured the specially priced Chrysler parts from AAR under a special pricing plan, and sold them to Cypros." (ECF No. 107 at Pg ID 1197.) Defendants argue that the oral requirements contract between the parties is not enforceable because the quantity of goods to be sold was not specified in writing. (ECF No. 115 at Pg ID 2710.)

Michigan Compiled Laws § 440.2201 provides the formal requirements for the sale of goods:

> [A] contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in the writing.

Plaintiff contends—as they have throughout the course of this litigation—that the statute of frauds does not apply here. Rather, Plaintiff argues that Michigan Compiled Laws § 440.2306 governs the oral requirements contract. Michigan Compiled Laws § 440.2306 provides that:

9

> (1) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
>
> (2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

Michigan Compiled Laws § 440.2306 generally governs exclusive dealing between a buyer or seller. Defendants allege that there was no exclusive dealing between the parties because Defendants were allowed to purchase car parts from any supplier. (ECF No. 110 at Pg ID 2561.)

Plaintiff directs the court to *GRM Corp. v. Miniature Precision Components, Inc.*, No. 06-15231, 2007 WL 734996 (E.D. Mich. Mar. 8, 2007). In *GRM Corp.*, the court stated that "[t]he absence of a specific quantity term is not fatal to a contract, if the quantity term is instead set by a standard of good faith in that commercial context and one party's business requirements." *Id.* at *2. The Sixth Circuit has found that "[a] promise to buy of another person or company all or some of the commodity or service that the promisor may thereafter need or require in his business is not an illusory promise and such a promise is a sufficient consideration for a return promise." *See Precision Rubber Prods. Corp. v. George McCarthy, Inc.*, 872 F.2d 187, 188 (6th Cir. 1989). Because Defendant Joseph

10

Kilani requested that Plaintiff only sell to Defendants, Plaintiff argues that the lack of a specific quantity is not fatal to contract between the parties to sell Chrysler auto parts.

The Court is not persuaded by Plaintiff's argument. For Plaintiff to have established there was exclusive dealing pursuant to Michigan Compiled Laws § 440.2306, there must be evidence of a good faith agreement that Cypros promised to either buy all or some of his products. *See Precision Rubber Prods. Corp.*, 872 F.2d at 188. Defendants did not make such a promise. Plaintiff's own representative testified during his deposition that Cypros was not required to purchase from Auburn:

> Q: Was there anything that required Cypros to continue doing business with Auburn at any time?
> …
> [Mr. Rigby]: Other than the in-house orders, whatever was in the system, if they wanted to terminate the relationship, but not for any reason, I mean, if they wanted to terminate the relationship, they could, yeah.

(Rigby Dep. 20:18-21:5.)

***

> Q: And once Auburn provided Cypros with pricing, Cypros had the option of saying either yes or no to that particular order, correct?
>
> [Counsel for Mr. Rigby]: Objection as to form.
>
> [Mr. Rigby]: If Cypros wasn't happy with the pricing, they didn't have an obligation to buy the part.

11

(Rigby Dep. 67:5-11.) Plaintiff fails to advance evidence to support a claim that the parties were engaged in exclusive dealing as evidenced by Mr. Rigby's testimony, the only evidence Plaintiff has provided. Therefore, the statute of frauds does apply.

Assuming arguendo that there was a valid contract in place, Plaintiff also fails to establish a breach of the contract. Plaintiff argues that Defendants breached in two ways: (1) purchasing car parts from parties other than Auburn and (2) commingling Plaintiff's products with non-Chrysler parts. (ECF No. 107 at Pg ID 1198.) Defendants did not breach by purchasing from other parties because there was no restriction on Cypros. As mentioned earlier, Mr. Rigby testified that Cypros did not have an obligation to purchase from Auburn. (Rigby Dep. 65:5-11; *see also* ECF No. 115 at Pg ID 2706.)

Plaintiff also cannot establish that Defendants committed a breach by commingling Plaintiff's products with non-Chrysler parts. While selling counterfeit car products can lead to violations of federal law,[3] the question here is whether Defendants violated a duty to Plaintiff by selling Chrysler and non-Chrysler car parts to the Middle East together. Plaintiff's complaint and briefs assert that the agreement stated their products would be sold in the Middle East.

---

[3] While the Court recognizes the seriousness of counterfeiting, this Court's task does not include evaluating any allegations of counterfeiting against the Defendants.

12

(Compl. ¶ 64.) No further requirements of distribution were included in the alleged agreement.

This Court is therefore dismissing Plaintiff's breach of contract claim against Defendants.

### C. Defendants' Counterclaims

#### 1. Fraud

In their summary judgment motion, Plaintiff alleges that Defendants cannot show fraudulent misrepresentation. Under Michigan law, a prima facie claim of fraud requires proof that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made [the representation] with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 760 N.W.2d 715, 719 (Mich. App. 2008). Under the Federal Rules of Civil Procedure, claims of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). In order to satisfy the particularity requirement, a plaintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state when and where the statements were made; and (4) explain why the statements were fraudulent. *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

13

Here, Defendants have specified the alleged fraudulent statements, identified the speaker, and why the statements were fraudulent. However, Defendants do not state when and where the statements were made in their Counterclaim, Answer, or Affirmative Defenses. (*See* ECF No. 25.) Therefore the Court is dismissing Defendants' fraudulent misrepresentation counterclaim.

### 2. Breach of Contract

Plaintiff also argues in their summary judgment motion that Defendants' breach of contract claim should be dismissed. As stated earlier, a party pleading breach of contract under Michigan law must show: "(1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions; (3) a party breached the contract; and (4) the breach caused the other party's injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. Appx. 452, 459 (6th Cir. 2012).

Because this Court finds that there is no enforceable contract pursuant to Michigan Compiled Laws § 440.2201, it is dismissing the breach of contract counterclaim.

## V. Defendants' Motion for Summary Judgment

In their motion for summary judgment, Defendants requested that the Court grant summary judgment in their favor for the issues raised by Plaintiff. Because the Court has dismissed the claims in Plaintiff's complaint and Defendants'

counterclaim in evaluating Plaintiff's motion for summary judgment, this Court does not need to conduct additional analysis evaluating Defendants' summary judgment motion.

## VI. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 107) is **GRANTED IN PART** as to Defendants' counterclaim of fraudulent misrepresentation and breach of contract, and **DENIED IN PART** as to the claims of tortious interference with a business relationship, tortious interference with an economic expectancy, and breach of contract;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 110) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Plaintiff's complaint (ECF No. 1) is dismissed.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 13, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 13, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager